[Civ. No. 9723.   First Appellate District, Division Two.—July 23, 1935.]

KENNETH C. HURD, Appellant, v. STANDARD GAS ENGINE COMPANY (a Corporation) et al., Respondents.

Elliott Johnson and Christopher M. Jenks for Appellant.

Hatch & Mahl, Charles B. Morris, A. J. Coogan and Glikbarg & Wolf for Respondents.

STURTEVANT, J.—From a judgment awarding him damages for personal injuries the plaintiff has appealed.

For many years the Standard Gas Engine Company, a corporation, hereinafter called the Gas Company, has been engaged in manufacturing internal combustion engines. It has a manufacturing plant on Dennison and King Streets, East Oakland. Shortly prior to the tenth day of September, 1932, the Standard Diesel Engine Company was incorporated. On the date last mentioned the Standard Gas Engine Company, as lessor, entered into a lease with the Standard Diesel Engine Company, under the terms of which the lessor let to the lessee the right to jointly use and occupy its manufacturing plant. The rental reserved was the sum of $125 per month. On the same day the Standard Gas Engine Company and the Standard Diesel Engine Company entered into a written contract by the terms of which the former subscribed for 67 shares of the common stock of the latter and agreed to pay therefor $1340 at the rate of $223.33 per month during the period of six months. It was further agreed that the second party would use and employ certain labor to be furnished by the first party and would pay therefor the price paid by the first party. On the same date the Standard Gas Engine Company and the Standard Diesel Engine Company entered into a third agreement in writing whereby the first party agreed to buy from the second party 33 shares of its common capital stock of no par value and agreed to pay therefor by transferring to the second party certain physical assets consisting of Diesel engines, castings, patterns, blue prints, etc., used in connection with the manufacture thereof. Thereafter the parties proceeded to operate under said agreements. Charles A. Winslow was the manager of each corporation.

The record presents no question of fraud on the part of either of the corporations, or any of the officers thereof.

Prior to the twenty-seventh day of January, 1933, the Diesel engine company had been engaged in the manufacture of multicylinder Diesel engines in the plant above mentioned. A rectangular room 17 feet by 27 feet was selected for the purpose and was known as the test room. Within it was a test stand for testing motors. It consisted of a motor bed to which was attached a dynamometer used to apply a load to the engine or to test its horsepower. On January 27, 1933, a four-cylinder monovalve Diesel engine was mounted on the stand and attached to the dynamometer. A pulley wheel was mounted on the shaft protruding from the side of the dynamometer away from the engine. It had only one use—to start the engine, at which time a leather belt connected it to an electric motor. When the engine started, the belt would be pushed off and allowed to coil up at one side of the test-room. After the engine started the pulley wheel revolved with the speed of the engine. The engine had been in place and had been operating day and night for a period of three weeks immediately preceding January 27, 1933. For some time prior to the date last mentioned Professor Carl A. Vogt, of the University of California, was conducting a post graduate course in mechanical engineering. He had a class in Diesel engines, the members consisting of a group of young naval officers. In the month of December, 1932, at a meeting of the Society of Automotive Engineers, a paper was read regarding the monovalve Diesel engine which had come to be known as the Winslow type. The students of Professor Vogt were not present at the reading but the paper was discussed in his classes. At times the classes visited various factories. One of the students asked Professor Vogt whether it would be possible to visit the Standard Gas Engine Company plant to see the Winslow Diesel engine. Professor Vogt thereupon telephoned to Mr. Winslow asking for permission and the request was granted. At 2 o'clock on January 27, 1933, Professor Vogt, together with the plaintiff and other members of the class, went to the plant. After the class arrived the Diesel engine was demonstrated to them. During such demonstration the pulley wheel, hereinabove mentioned, exploded, injuring several, including this plaintiff. For the injuries

sustained he commenced this action and named as defendants the Standard Gas Engine Company, the Standard Diesel Engine Company, and Charles A. Winslow. The jury returned a verdict in favor of the plaintiff against Standard Diesel Engine Company and Charles A. Winslow, but in favor of the defendant Standard Gas Engine Company. From the whole judgment entered on that verdict the plaintiff appealed. Because of a stipulation of the parties on file in this court the appeal presents solely an attack on the judgment in favor of the Gas Company.

Before the action was submitted to the jury the plaintiff filed amendments to his complaint. The substance of those amendments was to charge in effect that on the seventh day of January, 1933, the Gas Company and Charles A. Winslow, its manager, acting on the request of Standard Diesel Engine Company and Charles A. Winslow, its manager, selected from the equipment owned by the Gas Company the above-mentioned pulley for the use of the Diesel Company. That at the time of the selection all defendants knew the Diesel Company would attach the pulley to the Diesel engine and that it would thereafter operate the Diesel engine at a speed in excess of 1,000 revolutions per minute; that at said time defendants knew the maximum speed at which said pulley could safely be operated was 600 revolutions and no more; that thereafter the Gas Company permitted the Diesel Company to install the pulley and operate it continuously at a speed of 1,000 revolutions per minute and sometimes at a speed as high as 1800 revolutions; and that at all times the Gas Company knew how the Diesel Company was operating the engine and allowed it to continue to do so.

The plaintiff attacks several instructions as not being correct statements of the law. ■ The defendants reply that said attacks are immaterial because the Gas Company committed no act of negligence and the verdict must necessarily have been for that defendant. To that reply the plaintiff makes two replies. He asserts that the record as presented does not authorize an inquiry as to whether the Gas Company was or was not negligent. We think it does. The verdict was against Mr. Winslow and the Diesel Company. It was in favor of the Gas Company and in favor of the plaintiff. The latter appealed from the entire judgment. He has pre-

sented a bill of exceptions in which the testimony of each witness is purported to be stated in the narrative form. Then follows the statement, "The foregoing was all the evidence in the case." To the bill is attached the stipulation of all of the attorneys for all of the parties that the bill "is correct". Under these circumstances, in support of the judgment of the trial court, we must presume the bill is both full and correct.

We will now take up the point that the record does not disclose any act of negligence on the part of the Gas Company. As noted above the plaintiff alleged that on January 7, 1933, the Gas Company selected the pulley and delivered it to the Diesel Company. There is no conflict in the evidence. Said allegation has no support whatever. The written instruments did not provide for any deliveries or selections to be made at any time by the Gas Company except the delivery of possession of joint occupancy on September 15, 1932, the date of the commencement of the term of said lease and there is no evidence that any other was made. There is not a particle of evidence that the covenants of the lease were departed from. There is not a particle of evidence that the selection of the pulley was but an incident in accepting the lease. It was alleged that the Gas Company permitted the Diesel Company to operate its engine too rapidly. Under the lease it had no control over the Diesel Company and, so far as the record shows, never attempted to exceed its rights or duties in that regard. It had no interest in the manufacture or operation of Diesel engines except as a minority stockholder in the Diesel Company.

The evidence disclosed that one of the spokes in the pulley had been cracked and that the defective spoke was the cause of the explosion. But the evidence also showed that the spoke was cracked about thirty days prior to the accident. There was no evidence that there was any defect in the wheel September 15, 1932, the date of the lease. We therefore conclude there was no evidence of negligence on the part of the Gas Company.

As the Gas Company committed no act of negligence it was not liable whether, under the facts, the plaintiff was a licensee or an invitee. The instructions which the plaintiff attacks under exceptions numbers 2–8, inclusive, defining the rights

of invitees and licensees, were therefore immaterial. And, as there was no evidence that in doing what he did Mr. Winslow performed any act for the Gas Company, it follows that exception number 1, defining the liability of the Gas Company for the acts of negligence of its employees, is without merit.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

. A petition for a rehearing of this cause was denied by the District Court of Appeal on August 22, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was . denied by the Supreme Court on September 19, 1935.